ORIGINAL

FILED IN CLERK'S OFFICE
U S D C  Atlanta

'JUL 1 9 2007

JAMES N HATTEN, Clerk
By: *Sh Punck* Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SUSAN SWICEGOOD, )<br><br>Plaintiff, )<br><br>v. )<br><br>PLIVA, INC.; BARR )<br>PHARMACEUTICALS, INC.; )<br>WYETH, INC. d/b/a WYETH; and )<br>SCHWARZ PHARMA, INC., )<br><br>Defendants. ) | Civil Action File No.:<br><br>**1:07-CV-1671**<br><br>**TWT** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, **SUSAN SWICEGOOD** by and through her

undersigned attorneys, and files this Complaint for Damages against the above-named

Defendants and shows the Court the following:

## PARTIES, JURISDICTION AND VENUE

1.

Plaintiff, over the age of majority, is a citizen, and resident of the State of

Georgia. Plaintiff brings this action for the purpose of recovering all damages allowed

1

by law for personal injuries she suffered as a result of ingesting Reglan, metoclopramide and metoclopramide HCl, a prescription drug.

2.

Defendant PLIVA, INC. (hereinafter "PLIVA"), is a New York corporation with its principal place of business in New Jersey, and is a subsidiary or division of PLIVA D.D., a corporation organized, existing and doing business under and by virtue of the laws of the Republic of Croatia, headquartered in Zagreb, Croatia. At all times material hereto, PLIVA was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, metoclopramide tablets in the State of Georgia and in interstate commerce. PLIVA may be served with process through its agent for service of process, The Corporation Trust Company, located at 820 Bear Tavern Road, 3rd Floor, West Trenton, New Jersey 08628 PLIVA, INC. is subject to the jurisdiction and venue of this Court.

3.

Defendant, BARR PHARMACEUTICALS, INC. (hereinafter "BARR"), is a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its headquarters address at 400 Chestnut Ridge Road,

2

Woodcliff Lake, New Jersey 07677. BARR is the successor in interest to PLIVA, d.d. References in this Complaint to PLIVA include both Pliva, USA, and Pliva, d.d., individually and Barr Pharmaceuticals, as successor in interest to Pliva, d.d. BARR may be served with process through its agent for service of process, Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808. BARR PHARMACEUTICALS, INC. is subject to the jurisdiction and venue of this Court.

4.

Defendant WYETH, INC. d/b/a WYETH (hereinafter "Wyeth") is a Delaware corporation with its principal place of business at 5 Giralda Farms, Madison, New Jersey 07940, and is the successor in interest to A.H. Robins Company, Inc., a Virginia corporation which first obtained approval by the Food and Drug Administration to distribute metoclopramide, under the brand name of Reglan, in the United States. Until December 27, 2001, Wyeth manufactured and distributed Reglan through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania. Metoclopramide is the active ingredient of Reglan. WYETH also manufactures and distributes generic metoclopramide through its ownership of ESI LEDERLE, INC. (hereinafter referred to as "ESI"), which was formerly a subsidiary of WYETH and was merged into WYETH

3

on December 15, 1998. On December 27, 2001, WYETH sold the rights and liabilities associated with Reglan tablets and Reglan syrup to Schwarz Pharma, Inc., a Delaware corporation with its principal place of business in Wisconsin. References in this Complaint to Wyeth include both WYETH, INC. individually and as successor in interest to A.H. ROBINS, INC., AMERICAN HOME PRODUCTS CORPORATION, and ESI. At all times material hereto, Wyeth was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities, metoclopramide tablets in the State of Georgia and in interstate commerce. Wyeth may be served with process through its registered agent, The Prentice Hall Corp. System, 40 Technology Parkway South, # 300, Norcross, Georgia 30092. Wyeth, Inc. is subject to the jurisdiction and venue of this Court.

5.

Defendant, SCHWARZ PHARMA, INC. (hereinafter "Schwarz") is a Delaware corporation with its principal place of business in Mequon, Wisconsin. On December 27, 2001, SCHWARZ purchased the rights and liabilities associated with metoclopramide tablets from Defendant Wyeth pursuant to an Asset Purchase Agreement, executed on that date, which obligated it to be responsible for claims

4

relating to or arising out of the ingestion or use of metoclopramide from and after March 31, 2002, subject to a right to indemnification by Wyeth up to an amount not presently known by Plaintiffs. Plaintiffs are informed and believe that at all times relevant to this lawsuit, Defendant SCHWARZ and/or one of its predecessors in interest and/or one of its family of wholly owned divisions was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities, metoclopramide tablets in the State of Georgia and in interstate commerce. Schwarz may be served with process through its registered agent, CSC Entity Services, LLC, 103 Foulk Road, Suite 200, Wilmington, Delaware 19803. Schwarz Pharma, Inc. is subject to the jurisdiction and venue of this Court.

6.

All Defendants, identified *supra*, inclusive, and each of them, may be referred to in this complaint collectively as the "DRUG COMPANY DEFENDANTS."

7.

At all times relevant hereto, the DRUG COMPANY DEFENDANTS were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing,

5

labeling, promoting, packaging and/or advertising the pharmaceutical drugs known as Reglan, metoclopramide HCl and/or metoclopramide in the State of Georgia and in interstate commerce.

## FACTUAL ALLEGATIONS

8.

During all material times, Susan Swicegood, (hereinafter referred to as "Plaintiff") has been a resident of the State of Georgia.

9.

On or about April 4, 2005, Plaintiff's physician prescribed Reglan at a dosage of 10 mg., to be taken four times a day, in order to treat Plaintiff's nausea.

10.

Plaintiff's pharmacy filled Plaintiff's prescription for Reglan, with the generic equivalent, metoclopramide.

11.

Plaintiff ingested the prescription drug, Reglan, metoclopramide and/or metoclopramide as prescribed until on or about July 25, 2005.

12.

The active ingredient, metoclopramide and metoclopramide HCl is a dopamine

6

antagonist.

13.

Upon information and belief, in prescribing the Reglan, metoclopramide, and/or metoclopramide HCl drugs to Plaintiff on a long-term basis, Plaintiffs' physicians relied upon information published in the package inserts and/or the Physician's Desk Reference (hereinafter "PDR") or otherwise disseminated by the Reference Listed Drug Company (hereinafter "RLD") and/or the New Drug Application Holder (hereinafter "NDA holder"), in particular, that information disseminated by Defendants Wyeth and Schwarz

14.

Plaintiffs' physician was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR.

15.

Plaintiff's long term ingestion of Reglan, metoclopramide and/or metoclopramide HCl resulted in overexposure to the drugs Reglan, metoclopramide, and/or metoclopramide HCl which caused her to suffer serious, permanent and disabling neurological injuries, including but not limited to injuries of or associated

with the central nervous and extrapyramidal motor systems, specifically Tardive
Dystonia.

16.

Use of Reglan, metoclopramide HCl and/or metoclopramide caused Plaintiff to
suffer serious, permanent and disabling injuries including but not limited to injuries of
or associated with the central nervous and extrapyramidal motor systems. Because of
the injuries-Plaintiff suffered from the use of Reglan, metoclopramide HCl and/or
metoclopramide, Plaintiff has experienced and will continue to experience medical and
related expenses, loss of ability to provide household services, disfigurement,
disability, pain and suffering, psychological injury and other injuries and damages.

17.

Plaintiff's serious and permanent injuries, as described above, came about as a
foreseeable and proximate result of Defendant Wyeth and Defendant Schwarz (as the
Reference Listed Drug and or New Drug Applicant holder and Defendant Pliva (the
abbreviated New Drug Applicant holder) dissemination of inaccurate, misleading,
materially incomplete, false, and otherwise inadequate information concerning the
potential effects of exposure to Reglan, metoclopramide, and/or metoclopramide HCl
and the ingestion of Reglan, metoclopramide, and/or metoclopramide HCl drug to the

medical community, physicians, Plaintiff's physician, Plaintiff and other forseeable users of the drug.

18.

Reglan, metoclopramide HCl and/or metoclopramide was not approved by the United States Food and Drug Administration for long-term use.

19.

Because of the misleading information that the DRUG COMPANY DEFENDANTS provided to physicians and the FDA about the true risks associated with the use of Reglan, metoclopramide HCl and/or metoclopramide and because of the failure of the DRUG COMPANY DEFENDANTS and each of them to adequately inform physicians generally, including Plaintiff's physicians, about the true risks associated with the use of Reglan, metoclopramide HCl and/or metoclopramide, at all times relevant to this lawsuit, while Plaintiff was taking Reglan, metoclopramide HCl, and/or metoclopramide, her physicians never informed her of any side effects associated with Reglan, metoclopramide HCl, metoclopramide or that Reglan, metoclopramide HCl and/or metoclopramide was only approved for short term use (up to 12 weeks).

20.

At all times material hereto, Defendant Wyeth, individually and as successor-in-interest to A.H. Robins Company, was aware of the serious side effects caused by Reglan, metoclopramide HCl and/or metoclopramide including, but not limited to, central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

21.

Wyeth is the successor in interest to A.H. Robins Company, Inc., which first obtained approval by the United States Food and Drug Administration (hereinafter "FDA") to distribute metoclopramide, under the brand name "Reglan" under the FDA's New Drug Application (NDA)[1] schema.

22.

Under the FDA schema, Wyeth was/is the Reference Listed Drug Company (RLD), under a specific NDA, for Reglan, metoclopramide and metoclopramide HCl.

---

[1]Upon information and belief, Plaintiff believes Wyeth to be the holder of multiple NDAs for Reglan, metoclopramide and metoclopramide HCl.

23.

Under the FDA schema, Wyeth knew, as an NDA applicant, that it must fully, truthfully and accurately disclose to the FDA data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling which includes warnings about risks and side effects, test results for the drug, results of animal studies, results of clinical studies and the drug's bioavailability, because the data and information would be relied upon by the medical community, physicians, Plaintiff's physician, Plaintiff and other like forseeable users of Reglan, metoclopramide and metoclopramide HCl once the NDA was approved and Wyeth was listed as the Reference Listed Drug Company for Reglan, metoclopramide and metoclopramide HCl.

24.

Wyeth failed to fully, truthfully and accurately disclose Reglan, metoclopramide and metoclopramide HCl data to the FDA, and as a result intentionally and fraudulently mislead the medical community, physicians, Plaintiff's physician and Plaintiff about the risks associated with long term use of metoclopramide.

25.

Under the FDA schema, as the Referenced Listed Drug Company for Reglan, metoclopramide, and metoclopramide HCl, Wyeth has a duty to ensure its warnings to the medical community are accurate and adequate; has a duty to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

26.

Wyeth knowingly, intentionally and negligently disseminated misleading information to physicians' across the country, through a publication known as the *Physicians' Desk Reference*, labeling information for Reglan, metoclopramide and metoclopramide HCl which mislead the medical community, physicians and Plaintiff's physician about the risks of long term ingestion of the drug.

27.

Wyeth knowingly, intentionally and negligently disseminated misleading information to physicians' across the country, through a publication known as the *Physicians' Desk Reference*, labeling information for Reglan, metoclopramide and metoclopramide HCl which mislead the medical community, physicians and Plaintiff's physician about the increased risk of extrapyramidial side effects, including tardive

dystonia, diabetics were exposed to.

28.

At all times material hereto, Wyeth, Schwarz and Pliva, knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness of the risks associated with use of Reglan, metoclopramide HCl and/or metoclopramide and that consequently there was a widespread tendency for physicians to prescribe Reglan, metoclopramide HCl and/or metoclopramide for inappropriate long-term use. Therefore, Wyeth, Schwarz and Pliva knew or should have known that the package insert and the Physician Desk Reference monograph for Reglan, metoclopramide HCl and/or metoclopramide did not adequately inform physicians about the risks associated with Reglan, metoclopramide HCl and/or metoclopramide, particularly for patients whose bodies do not metabolize Reglan and/or metoclopramide effectively.

29.

Wyeth, Schwarz and Pliva  had access to and knew that severe side effects would result from the use of Reglan/ metoclopramide in the manner in which physicians were prescribing Reglan, metoclopramide HCl and/or metoclopramide and the fact that physicians did not fully understand the risks associated with Reglan,

metoclopramide HCl and/or metoclopramide through the defendants participation, individually and jointly, in or its ability to review data from clinical studies that were not publicly available, through its review of domestic and international medical literature concerning Reglan/ metoclopramide and through ongoing litigation.

30.

Wyeth failed to adequately warn physicians about the risks associated with Reglan, metoclopramide HCl and/or metoclopramide despite the fact that Wyeth knew that physicians, the medical community, the generic pharmaceutical industry, Plaintiff and other similarly situated relied on Wyeth to disclose what it knew and what it should have known from a prudent review of the information that it possessed or to which it had access.

31.

Defendant Wyeth's predecessor in interest, A.H. Robins Company, Inc. expressly warranted to some physicians that Reglan, metoclopramide HCl and/or metoclopramide is safe in long-term use. When A.H. Robins made those representations, A.H. Robins knew that those physicians would share that information with other physicians in their community and that eventually many physicians would come to rely on A.H. Robins' express warranties about Reglan, metoclopramide HCl

14

and/or metoclopramide's safety in long-term use. A.H. Robins' express warranties about the safety of Reglan, metoclopramide HCl and/or metoclopramide in long-term use were false.

## 32.

As successor in interest to A.H. Robins Company, Inc., Wyeth is legally responsible for representations and warranties made by A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan, metoclopramide HCl and/or metoclopramide.

## 33.

Defendant Wyeth knew, or should have known through the exercise of reasonable care, that the package insert for Reglan, metoclopramide HCl and/or metoclopramide substantially understated the prevalence of acute and long term side effects of Reglan, metoclopramide HCl and/or metoclopramide. Wyeth failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short term use and long term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

34.

Defendant Wyeth and its predecessors in interest had actual knowledge, through their own studies and studies by independent investigators, that doctors frequently prescribed Reglan, metoclopramide HCl and metoclopramide for long term use that was not safe for patients. Defendant Wyeth and its predecessors in interest had actual knowledge, through their own studies and studies by independent investigators, that nearly one-third of all patients who used Reglan, metoclopramide HCl and/or metoclopramide received it on doctors' prescriptions for 12 months or longer, rather than 12 weeks or less. Defendant Wyeth also had actual knowledge, through research by independent investigators, that the risk of tardive dystonia and other extrapyramidal side effects of Reglan, metoclopramide HCl and/or metoclopramide in patients who receive the drug for long term use is approximately 100 times greater than disclosed in Wyeth's package insert for Reglan and the Physicians Desk Reference monograph for Reglan brand metoclopramide. Defendant Wyeth also knew, or through the exercise of reasonable care should have known, that many patients who use Reglan, metoclopramide HCl and/or metoclopramide are not able to effectively metabolize Reglan, metoclopramide HCl and/or metoclopramide and that as a foreseeable consequence of their inability to effectively metabolize Reglan, metoclopramide HCl

16

and/or metoclopramide, those patients have a greater risk of developing serious and permanent injuries. Defendant Wyeth failed to disclose this information to the medical community and failed to adequately disclose this information to the generic pharmaceutical industry. Defendant Wyeth was aware that its failure to disclose this information to the medical community and its failure to disclose it to the generic pharmaceutical industry would probably result in serious injury to patients who were prescribed Reglan, metoclopramide HCl and/or metoclopramide by a physician who was not aware of this information. By failing to disclose this information to the medical community and the generic pharmaceutical industry, Defendant Wyeth acted in willful and wanton disregard of the rights of persons in the Plaintiff's class, and this conduct caused serious injury to the Plaintiff.

## 35.

On or about December 27, 2001, Defendant Schwarz became entitled to access to all of the information and knowledge then possessed by Defendant Wyeth concerning Reglan/ metoclopramide, as more particularly alleged above.

## 36.

Defendant Schwarz purchased from Wyeth the rights and *liabilities* associated with Reglan, metoclopramide and metoclopramide HCl tablets, upon information and

17

belief, the terms of which obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan, metoclopramide and metoclopramide HCl, subject to a right of indemnification from Wyeth up to a certain dollar amount.[2]

37.

Wyeth reviewed the article published in the *Archives of Internal Medicine*, in 1989, and written by Joseph Jankovic, entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature."

38.

Wyeth reviewed the article published in the *Annals of Pharmacology*, in 1992, written by Dr. Ronald Stewart, entitled "An Analysis of Inappropriate Long-Term Use in the Elderly."

39.

Wyeth reviewed the epidemiological study published in the medical literature, specifically the *Archives of Internal Medicine,* in June of 1993, and written by Linda Ganzini.

40.

Wyeth reviewed the epidemiological study published and written by Dr. Daniel

_____

2 Plaintiff does not have information regarding the maximum amount of

Sewell in 1994, regarding the frequency of tardive dyskinesia in metoclopramide treated patients.

41.

Wyeth reviewed the medical literature written by authors, Yassa & Jeste, in 1992, regarding the prevalence of tardive dyskinesia in patients exposed to long term neuroleptic drugs.

42.

Schwarz reviewed the article published in the *Archives of Internal Medicine*, in 1989, and written by Joseph Jankovic, entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature."

43.

Schwarz reviewed the article published in the *Annals of Pharmacology*, in 1992, written by Dr. Ronald Stewart, entitled "An Analysis of Inappropriate Long-Term Use in the Elderly."

44.

Schwarz reviewed the epidemiological study published in the medical literature, specifically the *Archives of Internal Medicine,* in June of 1993, and written by Linda

---

liability under the defendants' indemnification agreement.

Ganzini.

45.

Schwarz reviewed the epidemiological study published and written by Dr. Daniel Sewell in 1994, regarding the frequency of tardive dyskinesia in metoclopramide treated patients.

46.

Schwarz reviewed the medical literature written by authors, Yassa & Jeste, in 1992, regarding the prevalence of tardive dyskinesia in patients exposed to long term neuroleptic drugs.

47.

Under the FDA schema, as the Referenced Listed Drug Company for Reglan, metoclopramide and metoclopramide HCl, Schwarz has a duty to ensure its warnings to the medical community are accurate and adequate; has a duty to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

48.

Schwarz manufactured, marketed and distributed Reglan, metoclopramide and/or metoclopramide HCl at all relevant material times herein.

49.

Wyeth breached its duty to the medical community, Plaintiff's physicians, Plaintiff and other foreseeable users similarly situated, in that it failed to ensure Reglan, metoclopramide and metoclopramide HCl warnings to the medical community, physicians, Plaintiff's physician and Plaintiff were accurate and adequate.

50.

Wyeth breached its joint duty to the medical community, to Plaintiff's physicians, Plaintiff, and other foreseeable users similarly situated, in that it failed to conduct post market safety surveillance and report that information the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

51.

Wyeth breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, because it failed to review all adverse drug event information (ADE),[3] and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan, metoclopramide or

---

3 *See* 21 C.F.R. § 317.80(b).

metoclopramide HCl, to the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

52.

Wyeth breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, in that it failed to periodically review all medical literature regarding Reglan, metoclopramide, and metoclopramide HCl, and failed to report data, *regardless of the degree of significance*, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide and metoclopramide HCl.

53.

Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff and other foreseeable users similarly situated, because it failed to ensure Reglan, metoclopramide, and metoclopramide HCl warnings to the medical community were accurate and adequate.

54.

Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff and other foreseeable users similarly situated, because it failed to conduct post market safety surveillance and failed to report any significant data regarding the

adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

55.

Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan, metoclopramide or metoclopramide HCl, the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

56.

Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report any significant data concerning neurological side effects, *regardless of the degree of significance*, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

57.

Defendant PLIVA submitted an Abbreviated New Drug Application to the U.S. Food and Drug Administration, based on representations made by the RLD Company, requesting permission to manufacture, market, and distribute metoclopramide and/or metoclopramide HCl.

58.

Under the ANDA process, the Code of Federal Regulations *required* Defendant PLIVA to submit a label for metoclopramide and metoclopramide HCl, initially identical in all material aspects to the reference listed drug label.

59.

Defendant PLIVA began selling generic metoclopramide and/or metoclopramide HCl in 1988.

60.

PLIVA did not investigate the accuracy of its metoclopramide and/or metoclopramide HCl drug label.

61.

PLIVA did not review the medical literature for the metoclopramide drug.

62.

PLIVA did not review the medical literature for the metoclopramide and/or metoclopramide HCl drug.

63.

PLIVA is under a duty to ensure that its metoclopramide label is accurate.

64.

PLIVA did not review the article published in the *Archives of Internal Medicine*, in 1989, and written by Joseph Jankovic, entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature."

65.

PLIVA did not review the article published in the *Annals of Pharmacology*, in 1992, written by Dr. Ronald Stewart, entitled "An Analysis of Inappropriate Long-Term Use in the Elderly."

66.

PLIVA did not review the epidemiological study published in the medical literature, specifically the *Archives of Internal Medicine,* in June of 1993, and written by Linda Ganzini.

67.

PLIVA did not review the epidemiological study published and written by Dr. Daniel Sewell in 1994, regarding the frequency of tardive dyskinesia and tardive dystonia in metoclopramide treated patients.

68.

PLIVA did not review the medical literature written by authors, Yassa & Jeste, in 1992, regarding the prevalence of tardive dyskinesia and tardive dystonia in patients exposed to long term neuroleptic drugs.

69.

PLIVA relied upon the name brand manufacturer to review the aforementioned medical literature for the metoclopramide drug.

70.

PLIVA relied upon the reference listed drug company for the reference listed metoclopramide drug to review the aforementioned medical literature.

71.

Under the Code of Federal Regulations, Defendant PLIVA, as an ANDA holder, had a duty to ensure its Reglan, metoclopramide, and metoclopramide HCl warnings to the medical community were accurate and adequate; had a duty to conduct post

market safety surveillance; to review all adverse drug event information (ADE), and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan, metoclopramide or metoclopramide HCl, the medical community, Plaintiff's physician, Plaintiff and other forseeable users.

72.

Under the Code of Federal Regulations, if Defendant PLIVA, as the ANDA holder, discovers information in the course of the fulfillment of its duties as outlined above, Defendant PLIVA must report that information to the medical community, Plaintiff's physician, Plaintiff and other forseeable users of Reglan, metoclopramide and metoclopramide HCl to ensure that its warnings are continually accurate and adequate.

73.

PLIVA breached its duty to the medical community, Plaintiff's Physician, Plaintiff, and other foreseeable users similarly situated because it failed to ensure Reglan, metoclopramide, and/or metoclopramide HCl warnings to the medical community, Plaintiff's physician, Plaintiff, other foreseeable users similarly situated were accurate and adequate.

74.

PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to conduct post market safety surveillance of Reglan, metoclopramide, and/or metoclopramide HCl, and failed to report any significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

75.

PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan, metoclopramide or metoclopramide HCl, the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

76.

PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report any significant data concerning neurological side effects, *regardless of the degree of significance*, regarding the

adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

77.

PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to report to the FDA *any* data (medical literature) concerning the risk and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing the active ingredient metoclopramide and/or metoclopramide HCl.

78.

Despite this knowledge, assuming it was transmitted to Schwarz by Wyeth as contemplated in the Asset Purchase Agreement, Schwarz failed to disclose this information to the medical community and the generic pharmaceutical industry and thereby acted in willful and wanton disregard of the rights of persons in the Plaintiff's class, and this conduct caused serious injury to the Plaintiff.

79.

Defendant Pliva chose to rely on Defendant Wyeth and its predecessors in interest, to keep abreast of current medical literature concerning Reglan, metoclopramide HCl and/or metoclopramide and to inform them concerning its

knowledge of how physicians were using Reglan, metoclopramide HCl and/or metoclopramide and any dangers that were associated with that use, by properly reporting their knowledge to the FDA despite the fact that PLIVA knew, or should have known that Wyeth and its predecessors in interest had a history of failing to adequately warn physicians about other dangerous products. Defendant PLIVA failed to exercise reasonable care to independently monitor their sales of metoclopramide and the medical literature, which would have alerted them to the fact that Reglan, metoclopramide HCl and/or metoclopramide was widely over prescribed as a result of inadequate warnings in the package inserts and PDR monographs for Reglan brand and generic metoclopramide. Defendant PLIVA also knew, or should have known in the exercise of reasonable care that the package insert for Reglan, metoclopramide HCl and/or metoclopramide substantially understated the prevalence of acute dystonic reactions and other acute side effects of Reglan, metoclopramide HCl and/or metoclopramide and failed to use reasonable care to modify the package insert, and/or seek FDA approval to modify the package insert in order to adequately warn physicians and consumers.

80.

As successor in interest to Pliva, Defendant, Barr Pharmaceuticals, is legally

responsible for the actions, representations and warranties of Pliva, Inc., concerning

the safety and adequacy of Reglan, metoclopramide HCl and/or metoclopramide.

81.

As a result of the misrepresentations, breach of express and implied warranties

and negligence occasioned by the DRUG COMPANY DEFENDANTS, Plaintiff, was

prescribed excessive amounts of Reglan, metoclopramide HCl and/or metoclopramide

which caused her to suffer serious and permanent injuries as described above.

82.

As a result of the foregoing acts and omissions, Plaintiff, requires and will

require health care and services, and has incurred and will continue to incur medical,

rehabilitative, and related expenses. Plaintiff, has suffered and will continue to suffer

indirect costs, including diminished quality of life; and direct medical costs for follow-

up care, including hospitalizations, and other medical care.

83.

Pursuant to the provisions of O.C.G.A. ' 9-11-9.2 or otherwise, Plaintiff has

attached to this Complaint a medical authorization of Plaintiff while maintaining that

the Code Section is preempted by and in violation of the Health Insurance Portability

and Accountability Act of 1996 (HIPAA).

31

## COUNT I - Strict Products Liability

### 84.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

### 85.

At all relevant times the DRUG COMPANY DEFENDANTS were engaged in the business of manufacturing, designing, testing, marketing, promoting, distributing, and/or selling metoclopramide.

### 86.

At all times mentioned in this Complaint, metoclopramide was defective and/or unreasonably dangerous to Plaintiff and other foreseeable users at the time it left the control of the DRUG COMPANY DEFENDANTS.

### 87.

Metoclopramide was Adefective@ and Aunreasonably dangerous@ when the product initially was patented, and subsequently when it was promoted and entered into the stream of commerce and was received by Plaintiff, in one or more of the following respects:

(a)    At the time metoclopramide left the control of the DRUG COMPANY

DEFENDANTS it was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because the product breached an express warranty or failed to conform to other expressed factual representations upon which Susan Swicegood's physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiffs seek recovery herein.

(b) Metoclopramide was not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time the product left the possession of the DRUG COMPANY DEFENDANTS, and that such risks clearly outweighed the utility of the product or its therapeutic benefits.

(c) At the time metoclopramide left the control of the DRUG COMPANY DEFENDANTS it possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the product left the possession of the DRUG

COMPANY DEFENDANTS. Specifically, although the DRUG COMPANY DEFENDANTS were well aware that metoclopramide could potentially cause central nervous system side effects, depression with suicidal ideation, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with the metabolism of other prescription drugs and in fact, had significantly greater prevalence and severity of these side effects in patients with diabetes mellitus, warnings of such adverse health conditions were either not included on the package insert for these products or they were not adequate to inform reasonably prudent physicians and consumers. The DRUG COMPANY DEFENDANTS failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of metoclopramide.

(d)    The DRUG COMPANY DEFENDANTS' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger. There were no warnings or instructions that communicate sufficient information on the dangers and safe use of the product taking into

34

account the characteristics of the product, and/or the ordinary knowledge common to the physician who prescribes and the consumer who purchases the product, such as the Plaintiff.

(e)     The metoclopramide manufactured and supplied by the DRUG COMPANY DEFENDANTS was further defective due to inadequate post-marketing warning or instruction because, after the DRUG COMPANY DEFENDANTS knew or should have known of the risks of injury from Metoclopramide associated with long term use as commonly prescribed, they failed to promptly respond to and adequately warn about extrapyramidal side effects, among other adverse reactions.

88.

The DRUG COMPANY DEFENDANTS knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seeks recovery. A reasonably competent physician who prescribed metoclopramide and a reasonably competent Plaintiff who consumed metoclopramide would not realize its dangerous condition.

89.

The DRUG COMPANY DEFENDANTS knew or in light of reasonably available scientific knowledge should have known about the danger associated with use of metoclopramide that caused the damages for which Plaintiff seeks recovery.

90.

The reasonably foreseeable use of Reglan, metoclopramide HCl, and/or metoclopramide, that is ingestion as treatment for nausea on a long term basis, involved substantial dangers not readily recognizable by the ordinary physician who prescribed metoclopramide or the patient, like Plaintiff, who consumed Reglan, metoclopramide HCl and/or metoclopramide.

91.

The DRUG COMPANY DEFENDANTS knew that the metoclopramide was to be prescribed by physicians and used by consumers without inspection for defects in the product or in any of its components or ingredients and that metoclopramide was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

92.

Plaintiff and her physicians did not know, nor had reason to know, at the time of the use of metoclopramide, or at any time prior to its use, of the existence of the above-

described defects and inadequate warnings.

93.

These defects caused serious injuries to Plaintiff when the product was used in its intended and foreseeable manner, and in the manner recommended by the DRUG COMPANY DEFENDANTS or in a non-intended manner that was reasonably foreseeable.

## COUNT II - Negligence

94.   .

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

95.

At all times mentioned in this Complaint, the DRUG COMPANY DEFENDANTS had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings, and prepare for use and sell metoclopramide.

96.

The DRUG COMPANY DEFENDANTS knew or should have known that use of metoclopramide created an unreasonable risk as a result of its design, testing, and/or

manufacturing, including an unreasonable risk of central nervous system side effects, depression, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances and/or interference with drug metabolism, especially in female patients diagnosed with diabetes mellitus and more particularly in patients who are poor metabolizers of metoclopramide.

97.

The DRUG COMPANY DEFENDANTS were negligent, and breached duties owed to Plaintiff with respect to metoclopramide in one or more of the following respects:

(a) Despite knowledge of hazards and knowledge that the product was frequently prescribed for long term use, they failed to accompany the product with adequate warnings and instructions regarding the adverse and long lasting side effects associated with the use of metoclopramide and particularly with foreseeable long term use;

(b) They failed to conduct adequate testing;

(c) Despite knowledge of hazards, they failed to conduct adequate post-marketing surveillance to determine the safety of the product;

(d)     Despite knowledge of hazards, they failed to adequately warn Plaintiff's physicians or Plaintiff that the use of metoclopramide could result in depression with suicidal ideation, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances and interferences with drug metabolism; and

(e)     Despite the fact that the Drug Company Defendants knew or should have known that metoclopramide caused unreasonably dangerous side effects, they failed to adequately disclose the known or knowable risks associated with metoclopramide as set forth above; they willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of Plaintiff's safety or welfare.

98.

As a result of the negligence of the DRUG COMPANY DEFENDANTS and their willful and wanton misconduct, metoclopramide was prescribed to Plaintiff for long term use and was used long term by her, thereby causing her to sustain reasonably foreseeable serious and permanent damages and injuries as alleged in this Complaint.

99.

The negligence and the willful and wanton misconduct of the DRUG COMPANY DEFENDANTS was a proximate cause of Plaintiff's harm and injuries that Plaintiff has suffered and will continue to suffer as previously described.

## COUNT III - Fraudulent Misrepresentation

100.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

101.

As set forth above, Wyeth and its predecessors falsely and fraudulently represented to Plaintiff's physicians, and through them to Plaintiff and members of the general public, that Reglan, metoclopramide HCl and/or metoclopramide was safe for use to treat gastritis/gastro esophageal reflux and that central nervous system side effects and extrapyramidal symptoms were comparatively rare. These representations were, in fact, false. The true facts were that Reglan, metoclopramide HCl and/or metoclopramide was not safe for that purpose and was, in fact, dangerous to the health and body of Plaintiff.

102.

Wyeth and its predecessors made other representations about the safety and efficacy of Reglan, metoclopramide HCl and/or metoclopramide, and its minimal side effects all as set forth above and incorporated here by reference.

103.

These representations were in fact, false. The true facts were that Reglan, metoclopramide HCl and/or metoclopramide causes central nervous system side effects, and extrapyramidal symptoms, among other side effects, far more frequently than represented, and Wyeth and its predecessors did not disclose or warn physicians about the actual prevalence of known side effects of Reglan, metoclopramide HCl and/or metoclopramide, particularly when Reglan, metoclopramide HCl and/or metoclopramide is used on a long term basis or when used in patients who are poor metabolizers of metoclopramide, all of which were foreseeable. Wyeth and its predecessors misrepresented the safety of Reglan, metoclopramide HCl and/or metoclopramide and withheld warnings of the known side effects of Reglan, metoclopramide HCl and/or metoclopramide when used as commonly prescribed by physicians as specifically required by 21 CFR 201.128.

104.

When Wyeth and its predecessors made these representations, they knew that they were false. Wyeth made these representations with the intent to defraud and deceive Plaintiff's physicians and through them to defraud and deceive Plaintiff and with the intent to induce her and her physicians to act in the manner alleged in this Complaint that is to use Reglan, metoclopramide HCl and/or metoclopramide as pharmaceutical treatment for gastritis/gastro esophageal reflux for a period of time that far exceeded the FDA's approved indicated duration of use.

105.

At the time Wyeth and its predecessors made the above described representations and at the time Plaintiff and her physicians took the actions alleged in this Complaint, Plaintiff and her physicians were ignorant of the falsity of the representations and reasonably believed them to be true. In reliance upon the representations, Plaintiff's physicians were induced to and did prescribe Reglan, metoclopramide HCl and/or metoclopramide as described in this Complaint and Plaintiff did use Reglan, metoclopramide HCl and/or metoclopramide as described in this Complaint.

106.

If Plaintiff's physicians had known the actual facts they would not have prescribed Reglan, metoclopramide HCl and/or metoclopramide in the manner that they prescribed it and Plaintiff would not have taken Reglan, metoclopramide HCl and/or metoclopramide in the way that it was prescribed.

107.

The reliance of Plaintiff and her physicians upon the representations of Wyeth and its predecessors was justified because the representations were made by individuals and entities that appeared to be in the position to know the true facts.

108.

As a proximate result of the fraud and deceit of Wyeth and its predecessors, Plaintiff sustained the injuries and damages described in this Complaint.

109.

In doing the acts alleged in this Complaint, Wyeth and its predecessors acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages to deter Wyeth and others from engaging in similar conduct in the future. This wrongful conduct was done with the advance knowledge, authorization, or ratification of an officer, director, or managing agent of each of Wyeth and its predecessors.

## COUNT IV - Negligent Misrepresentation
## (As against Defendants WYETH and SCHWARZ)

110.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

111.

Wyeth and Schwarz had actual knowledge of facts which demonstrated that representations in the Reglan package insert, the PDR monograph for Reglan and literature that they distributed concerning Reglan, metoclopramide HCl and/or metoclopramide to physicians were false and misleading. Wyeth and Schwarz had an absolute duty to disclose the true facts regarding the safety of Reglan to physicians and their patients, pharmacists, and the generic metoclopramide industry, which they negligently failed to do. Furthermore, Wyeth and Schwarz had a duty to ensure that they had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations, all of which they negligently failed to do.

112.

Important information regarding Reglan, metoclopramide HCl and/or metoclopramide's risks was in the exclusive control of Wyeth and Schwarz and was exclusively known by them. As part of their business and in the furtherance of their own interests, Wyeth and Schwarz disseminated information regarding Reglan, metoclopramide HCl and/or metoclopramide to physicians and their patients, pharmacists and the generic metoclopramide industry and did so knowing that the safety of Reglan, metoclopramide HCl and/or metoclopramide users depended on the accuracy of that information. Further, Wyeth and Schwarz knew and expected that recipients of that information would rely on it, that they would take action based upon it, that individuals would be put in peril by such action and that those individuals would suffer physical harm as a result.

113.

Wyeth and Schwarz expressly and/or impliedly represented to Plaintiff, her physicians, pharmacists, the generic metoclopramide industry and members of the general public that Reglan, metoclopramide HCl and/or metoclopramide was safe for use to treat nausea and/or esophageal reflux for durations of use that exceeded the 12 week duration indicated in Wyeth's and Schwarz's package inserts and in the PDR. The representations by Wyeth and Schwarz and the lack of them were, in fact, false.

The true facts were that Reglan, metoclopramide HCl and/or metoclopramide was not safe for use in the manner in which it was prescribed and was, in fact, dangerous to the health and body of Plaintiff.

114.

Wyeth and Schwarz made the above described representations with no reasonable grounds for believing them to be true. Wyeth and Schwarz did not have accurate or sufficient information concerning these representations and they failed to exercise reasonable care both in ascertaining the accuracy of the information contained in those representations and in communicating the information. Further, Wyeth and Schwarz were aware that without such information they could not accurately make the above described representations.

115.

The above misrepresentations or omissions were made to Plaintiff, her physicians, pharmacists, the generic pharmaceutical industry and the general public, all of whom justifiably and foreseeably relied on those representations or omissions. Plaintiff would not have suffered her injuries but for the above misrepresentations or omissions. Wyeth's and Schwarz's misrepresentations or omissions were a cause in fact and a proximate cause of Plaintiff's damages.

## COUNT V – Fraudulent Concealment
## (As against Defendant WYETH)

116.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

117.

At all times mentioned in this Complaint, Wyeth and its predecessors had the duty and obligation to disclose to Plaintiff and to her physicians the true facts concerning Reglan/ metoclopramide, that is, that Reglan, metoclopramide HCl and/or metoclopramide was dangerous and defective and how likely it was to cause serous consequences to users, including injuries as described in this Complaint, and the true level of risk involved in prescribing Reglan, metoclopramide HCl and/or metoclopramide for the purposes indicated. Wyeth and its predecessors made the affirmative representations set forth above to Plaintiff, her prescribing physicians, and the general public prior to the day Plaintiff was first prescribed and used Reglan, metoclopramide HCl and/or metoclopramide while concealing the material facts set forth below.

118.

At all times mentioned in this Complaint, Wyeth and its predecessors had the duty and obligation to disclose to Plaintiff and to her physicians the true facts concerning Reglan, metoclopramide HCl and/or metoclopramide that is that long term use and exposure could cause central nervous system side effects, depression with suicidal ideation, akathisia, akinesia, tardive dyskinesia and tardive dystonia. At all times mentioned in this Complaint, Wyeth and its predecessors intentionally, willfully and maliciously concealed or suppressed the facts set forth above from Plaintiff's physicians, and therefore from Plaintiff, with the intent to defraud as alleged in this Complaint.

119.

At all times mentioned in this Complaint, neither Plaintiff nor her physicians were aware of the facts set forth above. Had they been aware of those facts, they would not have acted as they did, that is, would not have utilized Reglan, metoclopramide HCl and/or metoclopramide in the treatment of Plaintiff's nausea.

120.

As a proximate result of the concealment or suppression of the facts set forth above, Plaintiff was prescribed and took Reglan, metoclopramide HCl and/or metoclopramide and subsequently became ill, thereby sustaining the injuries and

48

damages as set forth in this Complaint.

121.

In doing the acts alleged in this Complaint, Wyeth, its predecessors, and its' successor in interest, Schwarz, acted with oppression, fraud, and malice, and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages and to Wyeth's and Schwarz's wealth, and sufficiently large to be an example to others and to deter Wyeth, Schwarz, and others from engaging in similar conduct in the future.

## COUNT VI - Breach of Implied Warranties

122.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

123.

The DRUG COMPANY DEFENDANTS knew that most physicians who prescribed Reglan, metoclopramide HCl and/or metoclopramide were not aware the drug is a dopamine antagonist and/or a neuroleptic agent, which is just as likely to cause serious extrapyramidal side effects as other dopamine antagonists and/or other neuroleptic drugs. The DRUG COMPANY DEFENDANTS also knew that the risks

of potentially irreversible neurological side effects when Reglan, metoclopramide HCl and/or metoclopramide is used long term were much greater than most physicians realized. By failing to give adequate warnings about the dopamine antagonist and/or neuroleptic properties of Reglan, metoclopramide HCl and/or metoclopramide and the risk of long term use that is associated with those properties, the DRUG COMPANY DEFENDANTS breached implied warranties of merchantability and fitness for the ordinary use of Reglan, metoclopramide HCl and/or metoclopramide.

124.

At all times mentioned in this Complaint, the DRUG COMPANY DEFENDANTS manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Reglan, metoclopramide and metoclopramide HCl and prior to the time it was used by Plaintiff, the DRUG COMPANY DEFENDANTS impliedly warranted to Plaintiff and to her physicians that the product was of merchantable quality and safe and fit for the use for which it was intended.

125.

Plaintiff relied on the skill and judgment of the DRUG COMPANY DEFENDANTS in using Reglan, metoclopramide and metoclopramide HCl.

126.

Reglan, metoclopramide and metoclopramide HCl was unsafe and unfit for its intended use, nor was it of merchantable quality, as warranted by the DRUG COMPANY DEFENDANTS, in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. Reglan, metoclopramide and metoclopramide HCl was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. As a result, Reglan, metoclopramide and metoclopramide HCl proximately caused Plaintiff to sustain damages and injuries as alleged in this Complaint by virtue of causing Plaintiff's illness.

127.

After Plaintiff was made aware of her injuries as a result of Reglan, metoclopramide and metoclopramide HCl, notice was duly given to the DRUG COMPANY DEFENDANTS of the breach of the above described warranties.

## COUNT VII - Joint And Several Liability

128.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

51

129.

By virtue of their individual and collective acts and omissions, Defendants are jointly and severally liable to Plaintiff as such acts and omissions have proximately caused Plaintiff to suffer a single indivisible injury for which each Defendant is responsible.

## COUNT VIII – Plaintiff's Damages

130.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

131.

As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendants, Plaintiff Susan Swicegood has:

(a) suffered severe and permanent injuries, which she will be forced to endure for the remainder of her life;

(b) suffered physical impairment and disfigurement;

(c) suffered physical pain and suffering;

(c) suffered mental pain and suffering;

(d) had her enjoyment of life severely impaired;

(e)     incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating her injuries; and

(f)     incurred attorney's fees and expenses of litigation related to this action.

Plaintiff is entitled to recovery an award for the injuries caused by the Defendants.

## COUNT IX - Punitive Damages

### 132.

Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

### 133.

The conduct of each Defendant, as set forth herein above was intentional, willful, wanton, oppressive, malicious, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that each Defendant acted only out of self interest and personal gain. Such conduct evidences a specific intent to cause harm to Plaintiff as provided under O.C.G.A. § 51-12-5.1.

### 134.

Accordingly, punitive damages should be imposed against each Defendant pursuant O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter each Defendant from repeating or continuing such unlawful conduct.

**WHEREFORE, Plaintiff prays:**

(a)     That process issue according to law;

(b)     That each Defendant be served with a copy of Plaintiff's Complaint and show cause why the prayers for relief requested by Plaintiffs herein should not be granted;

(c)     That Plaintiff be granted a trial by jury in this matter;

(d)     That the Court enter a judgment against each Defendant, jointly and severally, for all general and compensatory damages allowable to Plaintiff;

(e)     That the Court enter a judgment against each Defendant, jointly and severally, for all special damages allowable to Plaintiff;

(f)     That the Court enter a judgment against each Defendant serving to award Plaintiff punitive damages under the provisions of O.C.G.A. § 51-12-5.1;

(g)     That the Court enter a judgment against each Defendant, jointly and severally, for all other relief sought by Plaintiff under this Complaint;

(h)    That the costs of this action be cast upon Defendants; and

(i)    That the Court grant Plaintiff such further relief which the Court deems just and appropriate.

Respectfully submitted this 19th day of July 2007.

C. Andrew Childers
Attorney for Plaintiff
Georgia Bar: 124398


CHILDERS, BUCK & SCHLUETER, LLP
260 Peachtree Street, NW
Suite 1601
Atlanta, Georgia 30303
(404) 419-9500

Daniel J. McGlynn
LA Bar No. 17051
P. Ann Trantham
LA Bar No. 30972
(by C. Andrew Childers with express permission)
Applications for Admission Pro Hac Vice filed herewith


MCGLYNN, GLISSON & KOCH, APLC
P.O. Box 1909
340 Florida Street

55

Baton Rouge, Louisiana 70821
Telephone: (225) 344-3555
Facsimile    (225) 344-3666